```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


M. DIANE KOKEN,                  :      CIVIL ACTION
INS. COMM'R OF PA, IN HER        :      NO. 04-4342
OFFICIAL CAPACITY AS             :
LIQUIDATOR OF RELIANCE INS.      :
CO.,                             :
                                 :
          Plaintiff,             :
                                 :
          v.                     :
                                 :
PENSION BENEFIT GUARANTY         :
CORP. (PBGC),                    :
                                 :
          Defendant.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                  JULY 14, 2005

This action involves a dispute between the Insurance Commissioner of the Commonwealth of Pennsylvania, M. Diane Koken (the "Commissioner"), in her official capacity as Liquidator of Reliance Insurance Company ("Reliance") and the Pension Benefit Guaranty Corporation ("PBGC"). The PBGC is seeking to enforce several perfected statutory liens it holds against certain subsidiaries of Reliance. On August 25, 2004, the Commissioner filed a petition in the Commonwealth Court of Pennsylvania seeking, <u>inter alia</u>, a declaratory judgment that the liens held by the PBGC are void. The PBGC timely removed to this Court. The case raises complex issues concerning the allocation of federal and state responsibility for the administration of an

1

insolvent insurance company's pension benefits.  Before the Court is the Commissioner's motion to remand to the Commonwealth Court. For the reasons that follow, the motion will be denied.

I.    BACKGROUND

    A.    <u>The Reliance "Controlled Group"</u>

Reliance is an insolvent Pennsylvania insurance company now in liquidation proceedings in the Commonwealth Court of Pennsylvania.  Reliance is reportedly part of a "controlled group"[1] of corporations, as that term is defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

---

[1]    Under 29 U.S.C. § 1301,

> (A) "controlled group" means, in connection with any person, a group consisting of such person and all other persons under common control with such person;
> (B) the determination of whether two or more persons are under "common control" shall be made under regulations of the corporation which are consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under subsections (b) and (c) of section 414 of the Internal Revenue Code of 1986 [26 U.S.C. § 414(b), (c)] . . . .

29 U.S.C. § 1301(a)(14); <u>PBGC v. Ouimet Corp.</u>, 630 F.2d 4, 6 (1st Cir. 1980).

U.S.C. § 1001, et seq.  Reliance's controlled group consists of six tiers:

- <u>Tier One</u>: Reliance Group Holdings, Inc., the ultimate parent company;

- <u>Tier Two</u>: Reliance Financial Services Corporation, Reliance's immediate parent company[2];

- <u>Tier Three</u>: Reliance;

- <u>Tier Four</u>: RCG International, Inc. ("RCG")[3];

- <u>Tier Five</u>: RCG Moody International Limited and RCG Information Technology;

- <u>Tier Six</u>: Moody International Limited and Moody International, Inc.

On May 29, 2001, the Pennsylvania Insurance Department placed Reliance in rehabilitation and appointed the Commissioner as the Rehabilitator of Reliance.  On October 3, 2001, the Commonwealth Court of Pennsylvania granted the Commissioner's petition to place Reliance in liquidation and appointed the Commissioner as Liquidator of Reliance.

---

[2]  Reliance's immediate and ultimate parent companies are each currently in Chapter 11 bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of New York.  See <u>In re Reliance Group Holdings, Inc.</u>, No. 04-13404 (Bankr. S.D.N.Y. filed June 12, 2001).

[3]  RCG is reported to be a holding company.

3

The controlled group, consisting of the above six tiers of corporations, established two single-employer pension plans covered by the federal pension plan termination insurance program:[4] (1) the Reliance Insurance Company Employee Retirement Plan (the "Reliance Pension Plan"), and (2) the Reliance Group Holdings, Inc. Pension Plan (the "RGH Pension Plan").

Under ERISA, Reliance Group Holdings, Inc. (the ultimate parent corporation) and Reliance, as sponsors of their respective single-employer pension plans, must make periodic contributions and installments to their plans. 29 U.S.C. § 1082. Plan sponsors also must pay premiums under the mandatory pension plan termination insurance program established under Title IV of ERISA. Id. § 1307. Additionally, if a plan sponsor fails to make the requisite contributions and installments to its plan, or pay the requisite premiums, each member of its controlled group becomes "jointly and severally liable for payment of such contribution or required installment," as well as for "any

---

[4] This program guarantees pension benefits in the event a plan is terminated before being fully funded. See 29 U.S.C. §§ 1082, 1301-1461; PBGC. v. R. A. Gray & Co., 467 U.S. 717, 720 (1984).

premiums required to be paid by such contributing sponsor."[5]  Id. §§ 1082(c)(11)(B), 1307.

    B.   <u>The PBGC</u>

The PBGC is a wholly owned U.S. government corporation that administers the pension plan termination insurance program. Id. §§ 1301-1461. Modeled after the Federal Deposit Insurance

---

    [5]   Section 1082 provides, in part:

> (11) Liability for contributions.
>    (A) In general. Except as provided in subparagraph (B), the amount of any contribution required by this section and any required installments under subsection (e) shall be paid by the employer responsible for contributing to or under the plan the amount described in subsection (b)(3)(A).
>    (B) Joint and several liability where employer member of controlled group.
>      (i) In general. In the case of a plan other than a multiemployer plan, if the employer referred to in subparagraph (A) is a member of a controlled group, each member of such group shall be jointly and severally liable for payment of such contribution or required installment.

29 U.S.C. § 1082(c)(11)(B).

Section 1307 provides, in part:

> If the contributing sponsor of any single-employer plan is a member of a controlled group, each member of such group shall be jointly and severally liable for any premiums required to be paid by such contributing sponsor.

Id. § 1307(e)(2).

Corporation, the PBGC was established "to prevent the 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." Nachman Corp. v. PBGC, 446 U.S. 359, 374 (1980) (citation omitted).  Under ERISA, the PBGC becomes the statutory trustee of any plan terminated without sufficient funds to pay guaranteed benefits. 29 U.S.C. §§ 1322, 1342, 1361.  Each company within the plan sponsor's controlled group is jointly and severally liable for the required minimum funding contributions.  Id. § 1082(c)(11).  If the required contributions are not made, and the total amount of missed contributions exceeds $1 million, a lien in favor of the pension plan arises in the total amount of missed contributions. Id. § 1082(f)(1).  The lien attaches to "all property and rights to property, whether real or personal, belonging to such person and any other person who is a member of the same controlled group of which such person is a member."  Id.  Once the lien attaches, the PBGC is authorized to perfect and enforce the lien on behalf of the pension plan against the contributing sponsor and each member of its controlled group.  Id. § 1082(f)(5).

When a pension plan covered by the federal pension termination insurance program terminates, the contributing sponsor and each member of its controlled group also become jointly and severally liable to the PBGC for the amount of the plan's unfunded benefit liabilities, and to the statutory trustee

6

for all unpaid minimum funding contributions owed to the plan. Id. § 1362(a),(b),(c). The PBGC invariably is appointed statutory trustee of a terminated underfunded pension plan, and upon its appointment, it becomes responsible for paying a terminated plan's benefits, subject to statutory limitations. Id. § 1322, 1342, 1361.

    C.   RCG International Inc.'s Sale of Its Subsidiaries and the PBGC's Liens

On February 12, 2004, RCG International, Inc. ("RCG"), a wholly owned subsidiary of Reliance, entered a contract for the sale of one hundred percent of the shares of RCG Moody International Limited ("Moody") and all RCG's shares in two of Moody's subsidiaries to Moody International Finance Limited, which is a company outside of Reliance's controlled group of corporations. The contract gave Moody International Finance Limited one hundred percent ownership of Moody and its subsidiaries.

On April 2, 2004, three days prior to the closing on the sale of Moody and its subsidiaries, the PBGC perfected liens on the assets of (1) RCG, (2) Moody and its subsidiaries, the sale of which was scheduled to be completed, and (3) certain unidentified RCG subsidiaries. It is these PBGC liens on the assets of direct and indirect subsidiaries of Reliance which

prompted the Commissioner to petition the Commonwealth Court for, <u>inter alia</u>, a declaration that the PBGC's liens are void. The Commissioner's petition, in turn, prompted the PBGC to exercise its statutory right to remove the action to federal court. The Commissioner has timely filed a motion to remand in accordance with 28 U.S.C. § 1447(c).

II.  THE MOTION TO REMAND

Although the parties dedicate a substantial portion of their legal briefs to the merits of the ultimate dispute, which involves the question whether the PBGC's liens are valid and, if so, whether they are subject to Pennsylvania's priority scheme, the merits are not currently before the Court.[6]  Rather, the question presented by the Commissioner's motion to remand is simply: Which court, the Pennsylvania Commonwealth Court or this Court, gets to decide the merits of the parties' dispute. The PBGC bears the burden of proving that its removal to this Court

---

[6] The substantive dispute between the parties can fairly be characterized as one of claim priority.  The Commissioner argues that, under 40 Pa. Cons. Stat. Ann. § 221.44, the PBGC's claims are at best entitled to third-priority status.  According to the Commissioner, the PBGC's act of perfecting liens on the assets of certain Reliance subsidiaries improperly elevates the PBGC's claim status above that of a third-priority claim, in contravention of 40 Pa. Cons. Stat. Ann. § 221.44.  In response, the PBGC argues that federal law, i.e., 29 U.S.C. § 1082, authorizes it to perfect an enforce liens on the assets of the Reliance subsidiaries, and the PBGC's liens on those subsidiaries' assets are not subject to the priority scheme outlined in the Insurance Department Act of 1921, 40 Pa. Cons. Stat. Ann. § 221.1, <u>et seq.</u>

was proper.  <u>Boyer v. Snap-On Tools Corp.</u>, 913 F.2d 108, 111 (3d Cir. 1990).  It satisfies its burden by showing that this Court has subject matter jurisdiction and that it has complied with the procedure for removal.  <u>Id.</u>

The Court has exclusive jurisdiction over the present action.  Congress has vested "the district courts of the United States [with] jurisdiction of actions brought under this subsection [§ 1303(f)] without regard to the amount in controversy."  29 U.S.C. § 1303(f)(6).  The Commissioner, as a fiduciary[7] who claims she is "adversely affected by any action of the [PBGC] with respect to a plan in which [she] has an interest

---

[7] Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); <u>In re Mushroom Transp. Co.</u>, 382 F.3d 325, 346 (3d Cir. 2004).  The Commissioner falls within ERISA's definition of fiduciary because she exercises discretionary authority or control respecting management of a plan or the disposition of its assets.  See <u>O'Reilly v. Ceuleers</u>, 912 F.2d 1383, 1386 (11th Cir. 1990) ("The Director [of Insurance] does not, of course, have complete discretion over the management and disposition of the assets of the Trust, but the fact that a court oversees and must approve many of the Director's decisions does not bely the fact that the Director negotiates, solicits, drafts contracts and acts in general as the manager of the Trust. An individual is a fiduciary to the extent that he exercises <u>any</u> discretionary authority or control respecting management of a plan or the disposition of its assets.") (emphasis in original) (quoting <u>Mutual Life Ins. Co. of N.Y. v. Yampol</u>, 840 F.2d 421 (7th Cir. 1988)).

. . . , may bring an action against the [PBGC] for appropriate equitable relief <u>in the appropriate court</u>." <u>Id.</u> § 1303(f)(1) (emphasis added). Section 1303(f)(2) defines "appropriate court" as:

> (A) the <u>United States district court</u> before which proceedings under section 4041 or 4042 [29 USCS § 1341 or 1342] are being conducted,
> (B) if no such proceedings are being conducted, the <u>United States district court</u> for the judicial district in which the plan has its principal office, or
> (C) the <u>United States District Court</u> for the District of Columbia.

<u>Id.</u> § 1303(f)(2) (emphasis added). Thus, only a federal district court is an "appropriate court" to adjudicate the Commissioner's claim. Moreover, the parties do not dispute that venue is proper in this judicial district.

In turn, Section 1303(f)(7) authorizes the PBGC to remove actions brought against it in state court, provided it complies with 28 U.S.C. § 1446:

> In any suit, action, or proceeding in which the corporation [PBGC] is a party, or intervenes . . . , in any State court, the corporation may, without bond or security, remove such suit, action, or proceeding from the State court to the United States district court for the district or division in which such suit, action, or proceeding is pending by following any procedure for removal now or hereafter in effect.

10

Id. § 1303(f)(7).[8]  It is not contended that the PBGC has not complied with the procedure for removal.  Because the Court has subject matter jurisdiction and the PBGC has properly followed the removal procedure, this Court has a "virtually unflagging obligation . . . to exercise the jurisdiction given [it]."  Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004) (citation and internal quotation marks omitted).

The Commissioner advances three arguments in support of its conclusion that the Court should nevertheless remand the case to state court: (1) the McCarran-Ferguson Act, 15 U.S.C. § 1012, requires remand to the state court, (2) this Court should abstain from hearing the dispute pursuant to Burford v. Sun Oil Co., 319

---

[8]  Congress has expressly granted other federal corporations rights of removal similar to the PBGC's.  See, e.g., 12 U.S.C. § 1819(b)(2)(B) (providing that, subject to an exception not applicable here, "the [Federal Deposit Insurance] Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."); id. § 1441a(l)(1) ("Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the [Resolution Trust] Corporation is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.").  The removal statutes governing, e.g., the PBGC, the FDIC and the RTC, "evidence[] Congress'[s] desire that cases involving [these corporations] should generally be heard and decided by the federal courts." Spring Garden Assocs., L.P. v. Resolution Trust Corp., 26 F.3d 412, 416 n.8 (3d Cir. 1994).

U.S. 315 (1943) and its progeny, and (3) the Princess Lida doctrine, born from Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939), requires remand because the state court has already asserted in rem jurisdiction over property that is the subject of this action.  None of the arguments is persuasive.

First, the McCarran-Ferguson Act, 15 U.S.C. § 1012,[9] is not relevant to the issue of the Court's jurisdiction.  The McCarran-Ferguson Act provides that a state law enacted "for the purpose of regulating insurance" escapes federal preemption.  15 U.S.C. § 1012(b); U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 493 (1993) (holding that a state "priority statute, to the extent that it regulates policyholders, is a law enacted for the purpose of regulating the business of insurance" and therefore escapes

---

[9] In relevant part, the McCarran-Ferguson Act provides:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act [15 U.S.C. §§ 1 et seq.], and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 U.S.C. §§ 41 et seq.], shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. § 1012(b).

federal preemption by the federal priority statute). Thus, that Act is relevant, if at all, only to the merits of any priority-of-claims dispute that may arise from a clash between the federal priority statute, 31 U.S.C. § 3713, and the Pennsylvania priority scheme.[10] See, e.g., Fabe, 508 U.S. at 493 (where a federal court addressed a priority-of-claims question involving claims filed by the United States in an insurance liquidation proceeding).

---

[10] ERISA directs that, "in insolvency proceedings, the lien imposed under subsection (a) of this section [i.e., a lien held by the PBGC pursuant to 29 U.S.C. § 1368(a)] shall be treated in the same manner as a tax due and owing to the United States for purposes of Title 11 or section 3713 of Title 31." 29 U.S.C. § 1368(c)(2). Under the federal priority statute,

> (a)(1) A claim of the United States Government shall be paid first when--
>     (A) a person indebted to the Government is insolvent and--
>         (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
>         (ii) property of the debtor, if absent, is attached; or
>         (iii) an act of bankruptcy is committed; or
>     (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
>     (2) This subsection does not apply to a case under title 11.
>
> (b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713.

Second, Burford abstention is inappropriate here. In New Orleans Public Service, Inc. v. Council of the City of New Orleans ("NOPSI"), the Supreme Court expressly required that, as a threshold matter, for Burford abstention to apply, "timely and adequate state-court review [must be] available." 491 U.S. 350, 361 (1989); see also Hi Tech Trans, LLC, 382 F.3d at 304 (quoting NOPSI). Here, the only "appropriate court" that may adjudicate the issues presented in this case is a federal district court. 29 U.S.C. § 1303(f)(2). Therefore, there is no timely and adequate state-court review available to the parties.[11] Riley v. Simmons, 45 F.3d 764, 773 (3d Cir. 1995) ("Where a state court

---

[11] Even if there were timely and adequate state-court review available, "a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" NOPSI, 491 U.S. at 361 (citation omitted). The instant case involves questions not of state law but of federal law, namely, (1) whether the PBGC has properly exercised its authority under federal law to file liens, and (2) whether, if so, those liens are subject to the Pennsylvania priority scheme, in which case the Court would have to determine whether, under the circumstances of this case, the McCarran-Ferguson Act operates to save Pennsylvania's priority scheme from preemption by the federal priority statute. Moreover, for the reasons stated in this Memorandum's discussion of the Princess Lida doctrine infra, this Court's resolution of the federal questions involving the PBGC will not disrupt Pennsylvania's efforts to establish a coherent policy with respect to the orderly liquidation of insolvent insurance companies.

14

lacks jurisdiction over a plaintiff's claim, Burford abstention is clearly inappropriate because there can be no opportunity for 'timely and adequate state court review' of a claim that a court has no power to decide.") (citation omitted).

Finally, the Princess Lida doctrine does not require remand. Under the Princess Lida doctrine, a court, federal or state, "first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other [court]." 305 U.S. at 466. The Princess Lida doctrine does not apply, however, where a court's declaration "of the existence and amount of a claim against the debtor [and, a fortiori, against the assets of a debtor's subsidiaries] in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have." Gross v. Weingarten, 217 F.3d 208, 221 (4th Cir. 2000) (citations omitted). Here, the Commissioner seeks, inter alia, a declaration that the PBGC's liens on the assets of certain subsidiaries of Reliance, an insolvent insurance company, are void. The Court's resolution of this question does not interfere with the Commonwealth Court's possession of Reliance's assets for at least two alternative reasons.

One, although the Commissioner asserts that the assets of Reliance's subsidiaries could, at some undetermined point in

15

the future, be sold for the benefit Reliance's estate, at this juncture the assets of the subsidiaries are not necessarily part of Reliance's estate. "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary." Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (U.S. 2003). This is so because "[s]ubsidiaries, even if wholly-owned, are presumed separate and distinct entities from their parent corporations." Glidden Co. v. Dep't of Labor & Indus., 700 A.2d 555, 1997 (Pa. Commw. Ct. 1997). If the assets of the subsidiaries are not part of Reliance's estate, then the PBGC's liens on them, if valid, are not subject to Pennsylvania's priority scheme.

Alternatively, even if the PBGC's liens are deemed assets of Reliance's estate, any declaration by this Court that the PBGC's liens are valid does not involve a determination of what priority the liens should have under Pennsylvania's priority scheme. Rather, as the Supreme Court has stated, such a scenario would implicate the question whether the McCarran-Ferguson Act operates to save the state priority scheme from preemption by the federal priority statute. See Fabe, 508 U.S. at 493.

III. CONCLUSION

In view of the foregoing discussion, the Commissioner's motion to remand will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. DIANE KOKEN, | : | CIVIL ACTION |
| INS. COMM'R OF PA, IN HER | : | NO. 04-4342 |
| OFFICIAL CAPACITY AS | : | |
| LIQUIDATOR OF RELIANCE INS. | : | |
| CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENSION BENEFIT GUARANTY | : | |
| CORP. (PBGC), | : | |
| | : | |
| Defendant. | : | |

ORDER

**AND NOW**, this **14th** day of **July, 2005**, upon consideration of plaintiff's motion to remand (doc. no. 3), and defendant's response thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that an initial pretrial conference shall be held on **July 22, 2005** at **10:00 a.m.** in Courtroom 11A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

**AND IT IS SO ORDERED.**

**EDUARDO C. ROBRENO, J.**